# U.S. BANKRUPTCY COURT
## District of South Carolina

Case Number:  **26-01041-eg**

## ORDER DENYING MOTION TO EXTEND DEADLINE TO FILE PLAN

The relief set forth on the following pages, for a total of 12 pages including this page, is hereby ORDERED.

**FILED BY THE COURT**
**07/02/2026**



Entered: 07/02/2026

Elisabetta G. M. Gasparini
US Bankruptcy Judge
District of South Carolina

## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF SOUTH CAROLINA

IN RE:

Palmetto Therapy Services Inc.,

Debtor(s).

C/A No. 26-01041-EG

Chapter 11

**ORDER DENYING MOTION TO
EXTEND DEADLINE TO FILE PLAN**

**THIS MATTER** comes before the Court on the Motion to Extend the Deadline to File a chapter 11 subchapter V plan pursuant to 11 U.S.C. § 1189(b) (the "Motion") filed by Palmetto Therapy Services, Inc. ("Debtor") on June 10, 2026.[1] Debtor seeks an extension of the ninety (90) day deadline for filing a plan, asserting that it has been attempting to obtain financing and that Debtor's counsel was unaware that subchapter V requires a plan to be filed within ninety (90) days of the order for relief. The United States Trustee (the "UST") and Debtor's landlord, Plantation Center of Hilton Head, LLC ("Landlord"), objected to the Motion.[2] A hearing was held on July 2, 2026, at which Debtor's counsel, Debtor's representative, counsel for the UST, counsel for Landlord, and the Subchapter V Trustee appeared. At the hearing, Nathan Dixon ("Dixon"), Debtor's President, testified. This Court has jurisdiction to enter final judgment on the Motion pursuant to 28 U.S.C. § 1334. The issue to be decided is a core matter under 28 U.S.C. § 157(b)(2)(A) and (L). For the reasons set forth below, the Motion is denied.

---

[1] ECF No. 41.
[2] ECF No. 42, filed June 10, 2026 and ECF No. 45, filed June 15, 2026, respectively.

## FACTUAL BACKGROUND

On March 8, 2026, Debtor commenced this case under chapter 11 and elected treatment under subchapter V.  Debtor is the party to a lease with Landlord for space in Hilton Head on which a related entity, Lava 24 Fitness HHI LLC ("Lava"), operates a fitness center.  Pursuant to 11 U.S.C. § 1188, the Court scheduled a status conference for April 9, 2026.[3]  On April 7, 2026, Debtor filed the Subchapter V Status Report ("Status Report") indicating, among other things: "Debtor is seeking investment capital from a third party to recapitalize Debtor and gym entity to enable ongoing rent and expense payments without interruption and budget for marketing and staff for gym operation."[4]  The form Status Report noted at the bottom in bold font: "**Debtor must file a plan not later than 90 days after entry of order for relief, unless the court extends the deadline. . . .**"  At the status conference, the UST and the Subchapter V Trustee noted some deficiencies in Debtor's case; thus, on April 9, 2026, the Court entered an order requiring Debtor to file, by no later than April 13, 2026, all missing schedules and statements, the monthly operating report, and an application to employ an accountant.[5]  To date, no application seeking the retention of an accountant has been filed.[6]

Though Debtor is current with its monthly operating reports, the report for March 2026 was not filed until May 8, 2026 and the April report was also untimely filed on June 17, 2026.  The UST filed a Motion to Dismiss Case pursuant to 11 U.S.C. § 1112(b)(4)(A), (I), (J), and (M), due to Debtor's (a) failure to file tax returns due after the date of the order for relief; (b) failure to file a subchapter V plan within ninety days; and (c) Debtor's negative cashflow and no reasonable

---

[3] ECF No. 7.

[4] ECF No. 25, filed Apr. 7, 2026.

[5] ECF No. 33.

[6] In the Status Report, Debtor had indicated that Debtor had engaged a new tax preparer in December 2025 and that it believed that 2023 and 2024 returns had been filed.  It was unclear, however, whether the 2025 returns were also filed or in the process of being completed.  Notably, in the monthly operating report for May 2026, Debtor checked the box "N/A" when answering the question: "Have you timely filed your tax returns and paid all of your taxes?"

2

chance of its rehabilitation.[7]  A hearing on the Motion to Dismiss is currently scheduled for July 30, 2026.

Pursuant to § 1189(b), the Debtor's subchapter V plan was due on June 6, 2026.[8]  Debtor filed the Motion four days after the Plan was technically due requesting a thirty (30) day extension—*i.e.*, July 6, 2026.  In the Motion, Debtor claims that Landlord filed an arrearage claim in the amount of $121,931.10, which Debtor disputes.[9]  That, coupled with the claim of Bankers Healthcare Group LLC and accruing attorney and UST fees and costs require Debtor "to obtain funds beyond its current cash flow stream to propose a viable and successful plan."  The Motion further provides:

> Debtor informs counsel that he is diligently seeking outside funding, in the form of investments or loans, to fund its Plan.  Debtor is also exploring subtenancies for a portion of its leased space which would likely enable Debtor cure [sic] its actual arrearages within the duration of its present lease.  Debtor has not secured a contractual commitment for that purpose.  Debtor requests and [sic] extension of time for these funding purposes.

As an additional ground for seeking an extension, the Motion further notes:

> This Motion is being filed approximately 2 days after the statutory 90 days deadline due to counsel's lack of understanding/compliance regarding the hard deadlines imposed on Plan filing in subchapter V case, this being his first subchapter V case.

The UST and Landlord object to the extension sought in the Motion, positing that Debtor's generalized excuses are not sufficient because they are not beyond Debtor's control.  Moreover, both parties note that Debtor has been seeking outside sources of funding since the beginning of

---

[7] ECF No. 50, filed June 30, 2026.

[8] June 6, 2026, was a Saturday.  Accordingly, under Fed. R. Bankr. P. 9006(a)(1)(C), the deadline was extended to Monday, June 8, 2026.

[9] Notably, to date Debtor has not filed an objection to the Landlord's claim.  Moreover, at the hearing on the Motion, counsel for Landlord argued, among other things, that Debtor owes approximately $123,000.00 in prepetition arrearages and postpetition stub rent. Debtor did not contest the figures that Landlord represented to the Court.

3

the case, but nothing has materialized—no investor or lender has been identified, and no subtenant has been proposed for Landlord approval, as required by the lease.

At the hearing, Nixon testified that in the couple of days prior to the hearing, he had provided his counsel with financial documents and new projections to help formulate a feasible plan. No documents or projections, however, were introduced into evidence. According to Nixon, though Debtor had originally sought to obtain funding from investors, that route was no longer necessary for the time being because Lava had recently experienced increased revenue and was expecting its profits to continue to increase as a result of programs such as jujutsu and yoga classes being added to the gym's schedule and a new marketing program being put in place. Nixon acknowledged that along with increased revenue, the expenses would also increase as a result of additional marketing and wages for additional instructors but expected that the net profit would be greater overall, in turn resulting in more money being paid to Debtor and more funds to fund a plan of reorganization. Though Nixon testified that he had instructors lined up to teach the new classes, no contracts had been signed with any instructor but that the classes were "in the works" for the upcoming week. Nixon further acknowledged Landlord's lease did not allow the premises to be subleased without Landlord's approval and that nothing existed in writing approving Lava's sublease. He testified that Landlord's representative is aware that Lava is operating the gym on the Landlord's premises. Nixon testified that as of the date of the hearing there was approximately $35,000.00 in Debtor's bank account, and that Debtor was prepared to pay the July rent to Landlord—in the amount of approximately $30,000.00.

When questioned regarding the filing of its tax returns, Nixon indicated that Debtor had an extension to file its 2025 return. He further testified that he had been working with Better Ways Accounting out of Arizona to help Debtor in filing its 2025 tax returns. Although Nixon had

4

attempted to get the accounting firm retained in the bankruptcy case, the accountant was not willing to file an affidavit as required for an application pursuant to 11 U.S.C. § 327 for reasons that were not disclosed.  However, as Nixon stated, he believed he could "compel" them to cooperate and be retained in the bankruptcy case.  Nixon was also questioned about whether Debtor had been added as a named beneficiary on the insurance policy, but he was not able to confirm that the Debtor was a named beneficiary or whether the only party covered by the policy was Lava.

Landlord's counsel noted that Debtor had made postpetition payments, except for the stub-rent, but that those payments had not been timely.  Nixon acknowledged that Debtor had not been paying rent in full on the date due but had been in a position to pay the rent in two installments on certain months.  He explained that because Lava's business is seasonal, it caused fluctuation in income during certain months.  On cross examination, Nixon testified that Debtor would not be in a position to cure the rent arrearages on the effective day of a plan—or within the next few months—but had a plan to pay them over time.

The Subchapter V Trustee expressed concerns about Debtor's request.  First, she indicated that the Motion only sought a thirty (30) day extension, but it was not clear based on the arguments at the hearing that Debtor would be in a position to file a plan by that date, as he had indicated initially that Debtor would be in a position to file a proposed plan within ten (10) days of the hearing.  Second, she noted that for the plan to work it most likely would need for an agreement to be reached between Debtor and Landlord.  Although it appeared that Debtor had recently made a proposal to Landlord, an agreement had not been reached and it did not appear that the parties were anywhere close to a settlement.  Lastly, the Subchapter V Trustee expressed concern that even if Debtor were to file a plan within the next ten (10) days, it would in essence be a "placeholder" to satisfy the extended deadline.

**CONCLUSIONS OF LAW**

By enacting the Small Business Reorganization Act of 2019, Congress was attempting to streamline the reorganization and rehabilitation process for small business debtors by allowing subchapter V cases to proceed on an expedited basis. *In re Signia, Ltd.*, No. 23-14384, 2024 WL 331967, *1 (Bankr. D. Colo. Jan. 29, 2024). Consistent with subchapter V's emphasis on the prompt administration of cases, 11 U.S.C. § 1189 imposes a strict timetable for a debtor to propose a plan. Section 1189(b) provides that a subchapter V debtor must file a plan of reorganization within ninety (90) days of the order for relief, "except that the court may extend the period if the need for the extension is attributable to circumstances for which the debtor should not justly be held accountable." 11 U.S.C. § 1189(b).[10] From the outset, the Court agrees with other courts that have concluded that an extension can be granted pursuant to § 1189(b) after the deadline expires. *See In re Majestic Gardens Condominium Assoc., Inc.*, 637 B.R. 755, 757 (Bankr. S.D. Fla. 2022) (citing *In re Online King LLC*, 629 B.R. 340, 346-49 (Bankr. E.D.N.Y. 2021)). *See also* 8 Collier on Bankruptcy 1189.03 (16th 2026) ("In a small business case, section 1121(e)(3)(C) requires entry of an order extending the time for the debtor to file a plan before the existing deadline expires. Subchapter V does not contain such a requirement. Accordingly, the court may extend the deadline for a subchapter V debtor to file a plan even if the debtor requests it after its expiration.").

Although § 1189(b) permits retroactive extensions of the ninety (90) day filing deadline, the circumstances of the case must justify the extension. Debtor bears the burden of demonstrating sufficient grounds to justify an extension under § 1189(b). *Id.* at *3. The standard imposed by § 1189(b) is more demanding than the ordinary "for cause" standard applicable in other Chapter

---

[10] Sections 1189(b) and 1221 state:
> The debtor shall file a plan not later than 90 days after the order for relief under this chapter, except that the court may extend the period if the need for the extension is attributable to circumstances for which the debtor should not justly be held accountable.

11 cases and more stringent than the "excusable neglect" standard found in Fed. R. Bankr. P. 9006(b).    Opinions diverge, however, when it comes to interpreting what qualifies as "circumstances for which the debtor should not justly be held accountable." *Id.* at *4.  In reviewing the cases that have addressed the issue since subchapter V took effect in 2020, the U.S. Bankruptcy Court for the District of Colorado in *In re Signia,* identified the different standards that courts have used when applying § 1189(b).  *In re Signia*, *Ltd.*, No. 23-14384-TBM, 2024 WL 331967 (Bankr. D. Co. Jan. 29, 2024).

On one end of the spectrum, is what is often referred to as the "Beyond-the-Debtor's-Control Standard" which focuses on whether external factors beyond a debtor's control contributed to the inability to comply with the deadline.  *Id.* at *4;  *In re Seven Stars on the Hudson Corp*., 618 B.R. 333, 346 (Bankr. S.D. Fla. 2020) (adopting a strict approach).  Under this strict approach, a court would allow an extension of the deadline when circumstances beyond the debtor's control justify additional time to file a plan—circumstances such as a natural disaster or pandemic, a fire destroying a debtor's business records, or a computer virus disabling a debtor's information business, to name a few.  *In re Signia*, 2024 WL 331967 at *4.  Under the Beyond-the-Debtor's-Control-Standard, a debtor's need to finalize postpetition financing prior to the submission of a plan or counsel's error in calendaring the deadline for filing a plan are not sufficient circumstances beyond the debtor's control to warrant an extension.  *Id.* (concluding that the debtor's excuse that the plan could not be timely filed because the financing motion had been objected to was unavailing because "[t]hat type of rationale is not beyond the debtor's control); *In re Majestic Gardens Condominium Assoc., Inc*., 637 B.R. 755, 757 (Bankr. S.D. Fla. 2022) (concluding that a calendaring error of debtor's counsel was not sufficient to warrant an extension of the § 1189(b) deadline).

7

At the other end of the spectrum, some courts have adopted a "case-by-case" approach, declining to adopt any single governing standard, opting instead for a case-by-case factual analysis in adjudicating § 1189(b) extension requests. *See Northwest Child Dev Ctrs*., 2020 WL 8813586, *3 (Bankr. M.D. N.C. Dec. 8, 2020) (noting that the court did not have to take a position on which standard to apply because the debtor clearly failed to meet the burden under either approach).

The middle-of-the-road approaches that were identified by the court in *Signia* adopt an equitable balancing standard which allows for an equitable inquiry that considers all of the relevant circumstances relating to the need for the extension and balances the interests of the parties and the overarching goals of subchapter V. *In re Signia*, 2024 WL 331967 at *5-7; *In re Baker*, 625 B.R. 27 (Bankr. S.D. Tex. 2020); *In re Trinity Legacy Consortium*, LLC, 656 B.R. 429 (Bankr. D. N.M. 2023). As Colliers on Bankruptcy has noted, when combining the two approaches adopted in *Trinity Legacy* and *Baker*, the factors that courts may consider in determining whether to extend the deadline for the filing of a plan include the following:

1. Whether the circumstances raised by the debtor were within the debtor's reasonable control;
2. Whether the debtor had made progress in drafting a plan;
3. Whether the deficiencies preventing that draft from being filed were reasonably related to the identified circumstances;
4. Whether any party in interest has moved to dismiss or convert the case or otherwise objected to a deadline extension in any way;
5. The danger of prejudice by granting or refusing to grant the extension;
6. The debtor's good faith;
7. The views of creditors and the subchapter V trustee.

8 Collier on Bankruptcy 1189.03 (16th 2026). Colliers, however, noted:

> Under this approach, the need to conclude mediation with major creditors or to resolve issues in the bankruptcy case of an affiliate prior to filing a plan may justify an extension. Similarly, the need to resolve disputes concerning the debtor's interests in property before filing a plan may justify extending the deadline, but not if the debtor has failed to show that the dispute could not have been resolve prior to the deadline, what progress the debtor has made proposing a plan, and that its

resolution is essential to the plan, even in the absence of any objection to the extension.

*Id.*

Like the analysis in *Northwest Child Development Center*, the Court need not choose between the competing approaches or define the exact parameters of § 1189(b). The result is the same no matter which approach is adopted as Debtor has failed to satisfy its burden under any of the approaches. Debtor's assertion that counsel was unaware of the ninety-day deadline does not constitute a circumstance for which the Debtor should not justly be held accountable. Parties are generally bound by the acts and omissions of their counsel, and ignorance of the law does not satisfy the heightened standard imposed by § 1189(b). Such circumstances are not external to Debtor and are within the sphere of matters for which Debtor must bear responsibility. Moreover, this justification is unconvincing when the Status Report that Debtor's counsel filed on his client's behalf clearly noted in bold font that a plan was to be filed within ninety (90) days of the petition date.

Debtor's ongoing efforts to obtain financing likewise fail on the record before the Court, to establish circumstances beyond the Debtor's control. Negotiating financing and preparing a confirmable plan are ordinary components of the reorganization process. The Motion identifies no unforeseen external event, lender misconduct, governmental action, natural disaster, or other extraordinary circumstance that prevented Debtor from timely filing a plan. Since seeking bankruptcy protection, Debtor has sought outside sources of funding, which it still does not have. Though the Motion filed less than a month ago stated that Debtor had informed its counsel that it was "diligently seeking outside funding, in the form of investments of loans, to fund its Plan," Debtor now seems to base the feasibility of its plan—which has not been filed—solely on Lava's increased revenue stream. Nixon testified about a general plan to expand the programs available

9

to customers and to increase the marketing efforts at the fitness center—all initiatives that sound reasonable and have the potential to be profitable.  However, no concrete evidence, financial analysis, or reliable assurances were presented to the Court to establish the viability or expected profitability of these proposed plans.  No substantiating evidence was offered to lend credibility to the anticipated outcomes.  Instead, Nixon's testimony remained general and aspirational, without the factual support necessary to demonstrate that the proposed initiatives were likely to succeed.

Based on the record before the Court, the circumstances offered by Debtor in the Motion and at the hearing are insufficient to justify an extension of the § 1189(b) ninety (90) day deadline. Debtor's excuse that its counsel was not aware of the ninety (90) day deadline and the fact that it was seeking investments or other avenues to fund the plan are not circumstances beyond Debtor's control.  Debtor has not met its burden of proof for the Court to grant the extension sought.  Other courts have observed that this conclusion generally requires dismissal.  *See, e.g.*, *Online King*, 629 B.R. at 348; *Seven Stars*, 618 B.R. at 343.  However, based on the statements of Debtor's counsel at the hearing, the Debtor seeks to amend its voluntary petition to remove the subchapter V designation.  Pursuant to 11 U.S.C. § 103(i), subchapter V of chapter 11 only applies in cases in which the debtor has elected to proceed under it.  A debtor elects to proceed in subchapter V by making its election on the voluntary petition.  Pursuant to Fed. R. Bankr. P. 1009, "[a] debtor may amend a voluntary petition, list, schedule or statement at any time before the case is closed." Though the Court acknowledges that such amendment may come with its limitations, and while extending caution that amending the designation may not always resolve issues or go

10

unchallenged,[11] in this case, the Court will grant Debtor the opportunity to do so,[12] realizing that it may come with its costs and additional burdens.[13]  The Court, however, will not allow Debtor to take advantage to remove the subchapter V designation to simply benefit from additional time without any viable prospect to reorganize.  For these reasons,

**IT IS THEREFORE ORDERED** that the Motion to Extend the Deadline to File a Plan pursuant to 11 U.S.C. § 1189(b) is **DENIED**.

**IT IS FURTHER ORDERED** that Debtor is hereby allowed to amend its Voluntary Petition by July 8, 2026, to remove the designation as a subchapter V debtor.

**IT IS FURTHER ORDERED** that to the extent that Debtor amends its Voluntary Petition, it shall file a plan and disclosure statement no later than July 16, 2026.

**AND IT IS SO ORDERED**

---

[11] *See, e.g. In re Seven Starts on the Hudson Corp.*, 618 B.R. 333 (Bankr. S.D. Fla. 2020) (noting that although a small business debtor may be permitted to elect application to a subchapter V to an already-pending case, it may not amend the petition after expiration of the statutory plan-filing and status conference deadlines."); Fed. R. Bankr. Pro. 1020 (b) (allowing parties in interest or the UST to object to a debtor's designation within 30 days after an amendment to the designation is filed).

[12] *See in re Majestic Gardens Condominium Assoc., Inc*., 637 B.R. 755 (failure to file plan within deadline generally requires dismissal, but court allowed debtor's request to amend petition to remove subchapter V election instead of dismissing case).

[13] The Court is also not suggesting that in every case a debtor may designate itself as a subchapter V debtor and, when a plan is not proposed within the ninety (90) day deadline, change its designation to buy itself more time.  Although Rule 1009(a) allows a debtor to amend the voluntary petition before a case is closed, it does not appear fair for a debtor to proceed as a subchapter V debtor without a creditor committee being solicited or without the need to pay quarterly fees until the designation is amended.  At the hearing, counsel to the UST indicated that, to the extent the Court denied the Motion, it did not have his clients' approval to agree to Debtor's being able to amend its designation.

11